**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | | |
|---|---|---|
| PRINCE COOPER, | : | |
| | : | Civ. Action No. 16-6962 (RMB) |
| Petitioner | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| WARDEN D. ORTIZ, | : | |
| | : | |
| Respondent | : | |

**BUMB**, District Judge

Petitioner, Prince Cooper, a prisoner confined in the Federal Correctional Institution in Fort Dix, New Jersey ("FCI Fort Dix"), filed a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the Federal Bureau of Prison's ("BOP") imposition of sanctions upon a finding that Petitioner committed a "Prohibited Act" of possession, manufacture or introduction of a hazardous tool, Code 108. (Pet., ECF No. 1; Ex. A, ECF No. 1-2 at 2.) Respondent filed a response, opposing habeas relief (Response, ECF No. 6) and Petitioner submitted a reply. (Reply, ECF No. 9.)

I.  BACKGROUND

Petitioner is incarcerated in FCI Fort Dix, and assuming he receives the maximum possible good conduct time, his projected

release date is April 10, 2021. (Response, Declaration of Tara Moran ("Moran Decl."), Ex. 1, ECF No. 6-2 at 2.) On January 29, 2016, Petitioner received an incident report. (Id., Ex. 3, ECF No. 6-4 at 2.) In the report, Officer Golden wrote:

> On Saturday January 9th, 2016, at approximately 10:05 A.M. I, Senior Officer M. Golden, acting as the 5752-F Housing Unit Officer on day watch, accompanied by Officer M/ Boze, the East Compound Officer #2, conducted a search of room 219. When we entered the room I observed inmate Cooper Prince, register number 20705-052, attempt to conceal an unidentified object inside of a pair of black rubber gloves. I ordered all inmates present to submit to a pat search and leave the room. Inmate Cooper attempted to depart the room with the gloves on his person. I ordered him to leave all personal items in the room. I/M Cooper placed the gloves on the bed of bunk 1-Upper and left the room. I/M Cooper's allotted bed assignment is 219, 1 upper. When I searched the black rubber gloves, one (1) black Samsung flip phone with attached charger was found concealed inside of the gloves. I notified the East Operations Lieutenant. End of statement.

(Id.)

Upon receipt of the Incident Report, Petitioner was advised of his rights regarding the disciplinary process. (Id. at 3.) At that time, Petitioner stated, "I definitely have no idea what he is talking about." (Id.)

After investigation, the investigating staff member referred the Incident Report to the Unit Discipline Committee ("UDC") for a hearing, which was held on January 12, 2016. (Id. at 3-4.) The

UDC referred the case to a Discipline Hearing Officer due to the severity of the Incident Report. (Moran Decl., Ex. 3, ECF No. 6-4 at 4.)

The hearing before the DHO was held on January 21, 2016. (Id., Ex. 7, ECF No. 6-8 at 2.) According to the DHO report, at the hearing, Petitioner said the Incident Report did not make sense because "if they saw [me] with the phone why did they not get [me] immediately. He stated he was in the room and they patted down all of the inmates. He stated the lieutenant was there. He stated they stepped outside into the quiet room." (Id.)

In addition to Officer Golden's statement in the Incident Report, Officer Boze submitted a memorandum for the DHO hearing. (Id. at 3.) He wrote:

> [I] observed inmate COOPER, Prince . . . try to hide an unidentified object inside of a pair of rubber gloves. We [including Officer M. Boze] directed all of the inmates to submit to a search, and I conducted metal detector searches of every inmate as they departed the room. Inmate Copper [sic] attempted to depart the room with a pair of gloves on his person. Senior Officer Golden instructed I/M Cooper to leave all personal items in the room. When Senior Officer Golden searched the black rubber gloves, he discovered one (1) black Samsung flip phone with attached charger concealed inside of the gloves. East Operations was notified. End of statement.

(Id.)

The DHO found Petitioner guilty of violating Code 108, as charged. (Id.) In drawing this conclusion, the DHO relied on the

3

Incident Report, the memorandum submitted by Officer Boze, a photograph depicting the cell phone recovered by the officers who searched his room, and a chain-of-custody log. (Moran Decl., Ex. 7, ECF No. 6-8 at 3.) The DHO noted that he also considered Petitioner's statement but the staff member who recovered the phone clearly stated what he observed, and this was corroborated by the remaining evidence. (Id.)

The DHO imposed sanctions including disallowance of 40 days of good conduct time, 15 days disciplinary segregation suspended 90 days, 90 days loss of e-mail privileges, and 90 days loss of telephone privileges. (Id. at 4.) The DHO said the sanctions were appropriate because possession of a cell phone threatens the safety and welfare of the entire institution because cell phones have been used to aid in escapes, used to introduce contraband into the institution, and used to communicate with individuals outside the prison, possibly for illegal activity. (Id.) Petitioner received a copy of the DHO report on April 8, 2018, which advised him of his right to appeal through the BOP's administrative remedy procedures within 20 calendar days. (Id.)

Petitioner's attempt to appeal the DHO's finding to the BOP's Northeast Regional Director was rejected because all four copies of the appeal were not legible. (Moran Decl., ECF No. 6-1, ¶5 and Ex. 2, ECF No. 6-3 at 2.) He was given ten days to correct and resubmit the appeal. (Id.) The Regional Director received the

resubmission on May 13, 2016 but rejected it because it was untimely (due on May 8) and unsigned. (Moran Decl., ECF No. 6-1, ¶5 and Ex. 2, ECF No. 6-3 at 2.)

Petitioner appealed to the Central Office, which received his appeal on June 21, 2016. (Moran Decl., ¶6.) Petitioner failed to sign the appeal and the Central Office concurred with the Regional Director's rejection. (Id.; Ex. 2, ECF No. 6-3 at 4.) Petitioner was permitted to correct the submission and send it to the Regional Director. (Id.) Instead, Petitioner refiled in the Central Office on August 2, 2016. (Id.) The Central Office rejected the appeal and instructed: "If staff provide[d] a memo stating the late filing was not your fault, then re-submit to the level of original rejection." (Id.)

II. THE PETITION, RESPONSE AND REPLY

A. The Petition

Petitioner alleges the following. He was found guilty of possessing a cell phone on January 9, 2016 in FCI Fort Dix. (Pet., ECF No. 1 at 2.) On that day, two correctional officers searched Petitioner's room. (Id.) All inmates in the room were patted-down and searched with metal detectors and told to leave the room. (Id.) The officers then claimed to have discovered a cell phone charger inside a pair of rubber gloves on top of Petitioner's assigned bunk. (Id.)

5

Petitioner submitted a timely appeal of the DHO's determination of his guilt to the BOP Northeast Regional Office ("Regional Office"). (Pet., ECF No. 1 at 2.) The Regional Office, however, rejected that appeal because it did not contain a complete set of carbon copies. (Id.) Petitioner did not receive the rejection until May 6, 2016, two days before it had to be resubmitted to the Regional Office. (Id.) Petitioner immediately resubmitted the appeal, but it was denied as untimely. (Id.)

Petitioner was instructed to obtain a memo from a staff member stating the untimeliness was not his fault, but he could not find a staff member who was willingly to verify the date he received the rejection from the Regional Office, which was delivered via regular institution mail. (Id.) Petitioner attempted to appeal to the Central Office but was twice rejected. (Id.)

Petitioner asserts cause and prejudice to excuse the administrative exhaustion requirement. (Id. at 4.) Petitioner submits that the ten days he was provided to correct his appeal to the Regional Office was insufficient time to "travel in the US Postal system from Philadelphia to FCI Fort Dix, the processing time in the Fort Dix mailroom, the time to correct the error by Petitioner, and the time to travel back to Philadelphia via the USPS." (Id.) Because administrative rejections from the Regional Office are not treated as "legal mail," they are not delivered to inmates in an expedited manner. (Id.) Thus, Petitioner received

6

the first rejection notice on May 6, 2016, with only two days remaining for the Regional Office in Philadelphia to receive his corrected appeal, making compliance impossible. (Pet., ECF No. 1 at 4.)

Petitioner was permitted an opportunity to provide a staff memo stating the late filing was not his fault. (Pet., Ex. G, ECF No. 1-2 at 10.) Petitioner asked numerous staff members for a memo but none were willing to provide it. (Pet., ECF No. 1 at 4-5; Ex. H, ECF No. 1-2 at 21.) Petitioner submits his procedural default of the inmate grievance process should be excused because it was caused by the insufficient time he was given to respond to a rejection notice and staff's unwillingness to provide him a memo excusing the untimeliness. (Pet., ECF No. 1 at 5-7.)

On the merits of the petition, Petitioner contends "[v]arious inconsistencies and irregularities raise serious doubts about the Incident Report written to support Petitioner's disciplinary charges." (Pet., ECF No. 1 at 7.) Petitioner asserts the DHO's finding of guilt must be supported by the "greater weight of the evidence." (Id. at 7-8.)

Petitioner maintains that Officer Golden's and Officer Boze's reports so closely mirror each other "it is reasonable to assume (likely even) that one was copied from the other or both were written by the same person," which calls into question the veracity of the reports. (Id. at 8.) Petitioner also challenges the two

officers' statements because neither of their reports reflect that there was another lieutenant in the room during the pat-down searches, instead the reports incorrectly state the lieutenant was called to the scene later. (Pet., ECF No. 1 at 8-9.)

Further, Petitioner postulates that it was impossible for both officers to have witnessed the exact same thing "while simultaneously conducting thorough searches for the contraband on other inmates." (Id. at 9.) Finally, Petitioner describes the officers' reports as nonsensical because if they had observed Petitioner attempting to conceal an object, why did they not seize the object immediately. (Id.)

B. The Response

Respondent contends the Court should dismiss the petition because Petitioner failed to exhaust his administrative remedies. (Response, ECF No. 6 at 14.) Petitioner never corrected the mistakes in his administrative filings and never received a final decision on the merits. (Id.)

Petitioner claims he did not receive the Regional Director's rejection of his appeal in time to correct the deficiency within the ten-day period permitted, and he was unable to get a staff member to write a memo stating his untimeliness was not his fault. (Id.) Respondent suggests the Court should dismiss the petition because Petitioner has not shown that any staff member could corroborate his claim that the rejection notice was untimely and

8

precluded him from exhausting administrative remedies. (Response, ECF No. 6 at 14-15.)

On the merits of the petition, Respondent asserts Petitioner was provided every due process safeguard he was entitled to in the DHO hearing, and the DHO's decision was supported some evidence. (Id. at 15.) Therefore, the petition should be denied. (Id.)

### C. The Reply

In reply, Petitioner contends he met the cause and prejudice standard to excuse procedural default of the administrative remedy procedure. (Reply, ECF No. 9.) Petitioner asserts that each staff member he approached to obtain a memo excusing the untimeliness of his resubmission to the Regional Office could have verified when he received the late rejection. (Id. at 4.) Petitioner requested a memo from the officer who distributed mail to his housing unit that day, he spoke to his Unit Team Counselor, and he submitted written requests to mailroom staff, to whom he did not have direct access. (Id. at 4-5.)

## II. DISCUSSION

### A. Exhaustion of Administrative Remedies

An inmate ordinarily must exhaust his administrative remedies before filing a habeas petition under 28 U.S.C. § 2241. Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996) (citations omitted). A failure to satisfy the procedural rules of the BOP's administrative remedy process may constitute a

procedural default that bars review of the § 2241 petition. Moscato, 98 F.3d at 760.

When an inmate appeals a DHO decision, he is permitted to skip the usual step of appealing to the warden and appeal directly to the BOP Regional Director for the region where the inmate is located. 28 C.F.R. § 542.14(d). If the Regional Director denies the appeal, the inmate may appeal that decision to the General Counsel (a "Central Office Appeal") within 30 calendar days from the date of the Regional Director's response. 28 C.F.R. § 542.15(a) and (b)(3). "Appeal to the General Counsel is the final administrative appeal." Id. § 542.15(a)

An appeal may be rejected when it does not meet a requirement of the remedy program. 28 C.F.R. § 542.17(a). The prisoner must be given a reason for the rejection, and if the defect is correctable, he shall be informed of a reasonable amount of time in which to correct the defect and resubmit the appeal. 28 C.F.R. § 542.17(b). Time limits may be extended when an inmate demonstrates a valid reason for delay. 28 C.F.R. § 542.15(a).

If an inmate procedurally defaults his administrative remedies, he must show cause and prejudice to excuse the default. Moscato, 98 F.3d at 762. To demonstrate cause for a procedural default, a petitioner must show that an objective factor external to the petitioner impeded his efforts to comply with the procedural rule. Murray v. Carrier, 477 U.S. 478, 488 (1986).

Petitioner has procedurally defaulted his administrative remedies because he did not correct his Regional Office appeal and then proceed to the Central Office. See Millhouse v. Lewisburg, 666 F. App'x 98, 100 (3d Cir. 2016) (Petitioner procedurally defaulted administrative remedies by failing to seek review in the Central Office.) Petitioner, however, has shown cause to excuse his procedural default. Petitioner was unable to excuse the untimeliness of resubmission of his appeal to the Regional Office because no staff member was willing to provide him with a memo stating the untimeliness was not his fault. Petitioner provided a credible explanation that the untimeliness of his appeal was not his fault, and that he could not obtain the necessary staff memo to continue with the administrative remedy process. Petitioner was prejudiced by his inability to get the staff memo because it precluded any review of the DHO's hearing decision. Therefore, the Court will address the merits of the petition.

B. Legal Standard

28 U.S.C. § 2241 provides, in relevant part:

> (a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions . . .
>
> (c) The writ of habeas corpus shall not extend to a prisoner unless—
>
> . . .

> (3) He is in custody in violation of the Constitution or laws or treaties of the United States; . . .

Prisoners have a protected due process liberty interest in earned good conduct time. Wolff v. McDonnell, 418 U.S. 539, 557 (1974); see Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 454 (1985) ("Where a prisoner has a liberty interest in good time credits, the loss of such credits threatens his prospective freedom from confinement by extending the length of imprisonment.") The Supreme Court described five elements of procedural due process required for prison disciplinary hearings where an inmate is sanctioned with loss of good conduct time: (1) written notice of the charged misconduct at least 24-hours in advance of the hearing; (2) an impartial hearing body; (3) opportunity to present witnesses and documentary evidence; (4) assistance for illiterate inmates or in complex cases; and (5) a written statement of the evidence relied upon and the reasons for the sanction. Wolff, 418 U.S. at 564-70.

The decision of the DHO must be upheld if there is "some evidence" to support it. Hill, 472 U.S. at 455 (1985). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. at 455-56.

Code 108 is defined as a "Prohibited Act" in 28 C.F.R. § 541.3:

> Possession, manufacture, introduction, or loss of a hazardous tool (tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; e.g., hack-saw blade, body armor, maps, handmade rope, or other escape paraphernalia, portable telephone, pager, or other electronic device).

B.  Analysis

Petitioner's only claim is that the DHO's hearing decision was not supported by sufficient evidence. Petitioner asserts the DHO's decision must be supported by the "greater weight of the evidence," whereas Respondent claims the DHO's decision need only be supported by "some evidence."

The Supreme Court has held "that revocation of good time does not comport with 'the minimum requirements of procedural due process,' [Wolff, 418 U.S. at 558] unless the findings of the prison disciplinary board are supported by some evidence in the record." Hill, 472 U.S. at 454. "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. at 455-56. "The Federal Constitution does not require evidence that logically

13

precludes any conclusion but the one reached by the disciplinary board." Id. at 457.

Here, the DHO's decision was supported by some evidence, including the reports of Officer Golden and Officer Boze, and the photograph of the cell phone that was confiscated from inside a rubber glove on Petitioner's bunk. Petitioner's attacks on the credibility of the officers' reports are unpersuasive because the reports are not so similar as to lead to the conclusion that they must have been fabricated. There is nothing in the two reports suggesting the officers could not have observed what each reported observing.

Petitioner's contention that the officers would have immediately seized the cell phone if they had in fact observed Petitioner concealing something in a rubber glove while in his cell is equally unavailing. It is reasonable to infer the officers believed it was safer to remove Petitioner and the other inmates from the cell before looking to see what Petitioner was concealing in the glove. This Court does not find the veracity of the reports so improbable as to render the DHO's decision arbitrary and unsupported by some evidence.

III. CONCLUSION

For the reasons discussed above, the Court denies Petitioner's petition for a writ of habeas corpus under 28 U.S.C. § 2241.

An appropriate Order follows.

Dated:  August 16, 2018

                                                      s/Renée Marie Bump
                                                     **Renée Marie Bumb**
                                                     **United States District Judge**